UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TAMMY MELLENTHIN, as Administrator and Personal Representative of the Estate of JAMES F. MELLENTHIN, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE COUNTY OF MCDONOUGH, THE MCDONOUGH COUNTY SHERIFF'S OFFICE, EVAN C. SCHMALSHOF, NICHOLAS B. RUGGIO, )<br>)<br>)<br>)<br>)<br>Defendants. ) | Case No. 4:23-cv-04187-SLD-JEH |

ORDER

Before the Court are Defendants the County of McDonough, the McDonough County Sheriff's Office, Evan C. Schmalshof, and Nicholas B. Ruggio's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 20, and Motion for Leave to File Reply in Support of Motion to Dismiss *Instanter*, ECF No. 24.  For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART, and the motion for leave to file a reply is GRANTED.

### BACKGROUND[1]

Plaintiff Tammy Mellenthin is the Administrator and Personal Representative of the Estate of James F. Mellenthin ("James"), her son.  James died after being involved in a high-speed police chase on January 27, 2023 that started in Macomb, Illinois and ended in rural McDonough County, Illinois.  Plaintiff brings suit against McDonough County Sheriff's

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  Unless otherwise noted, the alleged factual background is drawn from Plaintiff's Amended Complaint, ECF No. 18.

1

Deputies Schmalshof and Ruggio, the McDonough County Sheriff's Office ("the MCSO"), and McDonough County arising out of the chase and James's ensuing death.

At 9:13 PM on January 27, 2023, Schmalshof and Ruggio were on duty. Schmalshof was informed from "McDonough County 911" that a blue Grand Am ("the 2006 Pontiac")[2] was "not stopping for city units" and was traveling eastbound from Columbia Street on Jackson Street. Am. Compl. ¶¶ 31–32, ECF No. 18 (quotation marks omitted). The intersection of Columbia Street and Jackson Street is in Macomb city limits, within the jurisdiction of the City of Macomb Police Department ("MPD"). Schmalshof and Ruggio were on Collins Avenue in Macomb. From their MCSO police vehicle radios, Schmalshof and Ruggio could hear conversations between MPD officers and between MPD officers and McDonough County 911.

Around 9:13 PM, Rowland instructed MPD officers to back down because he did not "think [they] ha[d] anything at th[at] point." *Id.* ¶ 38 (quotation marks omitted). Rowland repeated this instruction around 9:14 PM. Around 9:15 PM, Rowland ordered MPD "to terminate any effort to pursue the 2006 Pontiac." *Id.* ¶ 41 (quotation marks omitted). These instructions were "broadcasted in . . . Ruggio's vehicle and any MCSO vehicle with an activated in-car video/audio system." *Id.* ¶ 39. MPD never requested assistance from MCSO in pursuing the 2006 Pontiac.

However, at approximately 9:13 PM, Schmalshof and Ruggio each departed from Collins Avenue intending to pursue the 2006 Pontiac, activating their emergency lights. Schmalshof had a civilian passenger in his vehicle. At that time, neither Schmalshof nor Ruggio knew the reason the 2006 Pontiac had been stopped or the crime for which any occupant of the 2006 Pontiac was

---

[2] The Amended Complaint refers to the vehicle in pursuit as the 2006 Pontiac, *see* Am. Compl. ¶ 36, though it is not clear when Schmalshof and Ruggio would have learned that the "blue Grand Am" as described in the 911 communication was a 2006 model.

wanted. And neither sought or received permission or received direction from a supervisor to engage in the pursuit.

During his pursuit of the 2006 Pontiac, Schmalshof drove his MCSO vehicle above the speed limit, disregarded traffic safety controls, and traveled in the center turn lane and in the opposite lane of traffic, all without visual contact of the 2006 Pontiac. After turning onto Illinois State Route 67, Schmalshof saw the 2006 Pontiac and informed McDonough 911. Route 67 is a two-lane highway. Schmalshof increased his speed to 140 miles per hour to decrease distance between his vehicle and the 2006 Pontiac. Two cars passed Schmalshof and the 2006 Pontiac traveling the other direction. Schmalshof had crossed the center line and "narrowly avoided colliding with the second oncoming vehicle." *Id.* ¶ 65. After the two cars passed, Schmalshof moved his vehicle into the oncoming lane of traffic and positioned his vehicle so that the front bumper was "adjacent to the left-rear quarter panel of the 2006 Pontiac." *Id.* ¶ 67. He then steered his car toward the 2006 Pontiac at over 100 miles per hour attempting to execute a Precision Immobilization Technique ("PIT"). Schmalshof's vehicle collided with the left-rear quarter panel of the 2006 Pontiac, the rear end of the 2006 Pontiac moved westward, and the 2006 Pontiac crossed the centerline, rolled over, and came to rest in a field on the east side of Route 67. James, who was driving the 2006 Pontiac, died as a result of the collision.

Plaintiff filed suit against Defendants on October 26, 2023. *See generally* Compl., ECF No. 1. She filed the eleven-count Amended Complaint on January 30, 2024. *See generally* Am. Compl. The first four claims are brought pursuant to 42 U.S.C. § 1983. In Count I, she alleges that Schmalshof violated James's Fourteenth Amendment right to due process by pursuing James's vehicle in a manner that shocks the conscience and shows deliberate indifference or reckless regard for James's life, liberty, and property "such that one can infer he intended to

3

inflict injury upon" James. *Id.* ¶¶ 110–18. In Count II, she alleges that Schmalshof violated James's Fourth Amendment rights through his use of unreasonable excessive and deadly force. *Id.* ¶¶ 119–23. In Count III, she alleges that McDonough County and the MCSO are liable for James's constitutional violations because they occurred as a result of McDonough County and the MCSO's failure to train their employees on how to conduct a lawful and appropriate vehicle pursuit. *Id.* ¶¶ 124–38. In Count IV, she alleges that McDonough County and the MCSO are liable for James's constitutional violations because Schmalshof was acting pursuant to a *de facto* policy of the MCSO to violate the MCSO's written vehicular pursuit policy "by engaging in vehicular [p]ursuits for misdemeanors, lesser/petty offenses, and non-forcible felonies" and "to drive MCSO vehicles in [p]ursuit with reckless disregard for the safety and life of the motoring public, with the intent to harm or cause injury to fleeing suspects or their property, and/or in a manner where injury or death of fleeing suspects was a highly predictable consequence." *Id.* ¶¶ 139–56. In Counts V through XI, Plaintiff brings state law wrongful death claims against all four Defendants; personal injury claims by James against all four Defendants through the Illinois Survival Act, 755 ILSC 5/27-6; and a claim that McDonough County and the MCSO have to indemnify Schmalshof and Ruggio. *Id.* ¶¶ 157–92.

      Defendants move to dismiss Counts I through IV for failure to state a claim and argue the Court should decline to exercise supplemental jurisdiction over the state law claims. Mot. Dismiss ¶¶ 3–4, 6–7. In the alternative, they argue that Schmalshof is entitled to qualified immunity for Counts I and II. *Id.* ¶ 5.

**DISCUSSION**

I. **Motion for Leave to File a Reply**

For all motions other than summary judgment motions, "[n]o reply to the response is permitted without leave of Court." Civil LR 7.1(B)(3) (effective through September 18, 2024). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the [c]ourt finds that a reply from the moving party would be helpful to its disposition of the motion." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, Case No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted). Despite Plaintiff's objection to the motion, *see generally* Resp. Mot. Leave File Reply, ECF No. 25, the Court finds the reply brief helpful in clarifying some of Defendant's positions and adds to the completeness of the record. Therefore, the motion for leave to file a reply is GRANTED. The Clerk is directed to file the reply, ECF No. 24-1, on the docket.

II. **Motion to Dismiss**

A. **Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'" are not sufficient to satisfy the plausibility standard.  *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

    B.  Analysis

Defendants' primary argument is that Plaintiff has not pleaded plausible claims for Fourth or Fourteenth Amendment violations because Supreme Court precedent is clear "that an officer's attempt to terminate a dangerous-high speed car chase that threatens the lives of innocent bystanders does not violate the Constitution, even when it places the fleeing motorist at risk of serious injury or death."  Mem. Supp. Mot. Dismiss 1–2, ECF No. 21 (citing *Scott v. Harris*, 550 U.S. 372 (2007)).  Alternatively, they argue that Schmalshof is entitled to qualified immunity "because there is no clearly established federal law that precluded [his] actions."  *Id.* at 2.  They argue that the *Monell* claims in Counts III and IV must be dismissed "because *Monell* liability cannot survive without an underlying constitutional deprivation."  *Id.* (footnote omitted). Lastly, they argue the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *Id.*  The Court takes up these arguments in turn.

6

### 1. Count I: Fourteenth Amendment Substantive Due Process Claim

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[T]he Due Process Clause of the Fourteenth Amendment includes within its ambit protection of the individual against arbitrary action of government." *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) (quotation marks omitted). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quotation marks omitted).

However, a substantive due process claim cannot proceed if there is a more specific constitutional provision that applies. *Id.* at 843. Thus, if the Fourth Amendment covers this claim, Plaintiff cannot pursue a substantive due process claim. *See id.* at 843–44. The Fourth Amendment covers seizures, so if the interaction Plaintiff alleges occurred qualifies as a seizure, then she cannot state a substantive due process claim. A seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 844 (quotation marks omitted). Plaintiff's response concedes that Schmalshof's actions were taken intentionally, not accidentally. *See, e.g.*, Resp. Mot. Dismiss 9, ECF No. 22 ("Schmalshof positioned his MCSO vehicle in the oncoming lane alongside the Pontiac, then deliberately steered back across the centerline, and made contact with the Pontiac."); *id.* (calling Schmalshof's actions a "deliberate maneuver"). And her Amended Complaint makes clear that Schmalshof was intending to stop or limit James's movement, whether through a PIT, forcing James's car off the road, or blocking James's path of travel and pushing him to a less traveled road. Am. Compl. ¶¶ 69–72. That Schmalshof ended up hitting the vehicle even if he only

7

intended to block it or bring it to a stop without impact does not change that this was a seizure. *See Brower v. County of Inyo*, 489 U.S. 593, 598–99 (1989) (advising that courts should not "draw too fine a line" when determining if "the means that terminates the freedom of movement is the very means that the government intended"); *id.* (giving the example that a court should not conclude "that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned"). It is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599.

Because the amended complaint's allegations compel a finding that there was a seizure, Plaintiff has pleaded herself out of court on the substantive due process claim. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." (quotation marks omitted)).[3] Count I is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

### 2. Count II: Fourth Amendment

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[3] Plaintiff claims that she has pleaded "alternative claims under the Fourth and Fourteenth Amendment[s]." Resp. Mot. Dismiss 5 n.2. Although parties "need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Generally, "an alternative claim is drafted in the form of 'either-or' and a hypothetical claim is in the form of 'if-then.'" *Id.* Here, an alternative claim would be that Schmalshof either violated James's substantive due process rights by unintentionally harming him or his Fourth Amendment rights by intentionally harming him. But there is no indication in the Amended Complaint that this is what Plaintiff was doing. Instead, Plaintiff refers to the allegations regarding Schmalshof's intentional behavior both in Count I's allegations, *see* Am. Compl. ¶ 112, and in the portion of her response about the Fourteenth Amendment claim, *see* Resp. Mot. Dismiss 9.

U.S. Const. amend. IV. "[C]laims that law enforcement officers used excessive force" are analyzed under the Fourth Amendment as unreasonable seizures. *Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009). "Whether the force used to effect a seizure is excessive depends on the totality of circumstances under an objective reasonableness standard." *Id.* "[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them . . . ." (alteration in original) (quotation marks omitted)).

As already discussed, there was a seizure in this case. Defendants, however, argue that Plaintiff has not sufficiently alleged that the seizure was unreasonable. They contend that under *Scott v. Harris*, 550 U.S. 372 (2007), Schmalshof's actions were reasonable. Mem. Supp. Mot. Dismiss 7–10.

The plaintiff in *Scott* had taken the police on a high-speed chase—he "swerve[d] around more than a dozen other cars, cross[ed] the double-yellow line, . . . force[d] cars traveling in both directions to their respective shoulders," ran multiple red lights, and traveled in the left-turn-only lane for "considerable periods of time." *Scott*, 550 U.S. at 379. Officers chased his car, attempted to box his car in, and continued chasing his car when he evaded the trap. *Id.* at 375. Finally, one officer decided to terminate the chase by employing a PIT, which would cause the plaintiff's vehicle to spin to a stop. *Id.* But instead of employing a PIT, the officer hit the back of the plaintiff's vehicle with his bumper, causing the plaintiff to lose control of his vehicle, crash, and suffer severe injuries. *Id.*

The Supreme Court noted that to determine the reasonableness of a seizure, it balances the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the importance of the government's interests which justify the intrusion. *Id.* at 383. As applied to the facts of that case, the Supreme Court had to weigh "the risk of bodily harm that [the

9

officer]'s actions posed to [the plaintiff] in light of the threat to the public that [the officer] was trying to eliminate." *Id.* The Supreme Court found that there was no factual issue regarding whether the plaintiff "was driving in such a fashion as to endanger human life"—no one could find for the plaintiff on that question. *Id.* at 380. But there was also no question that the officer's actions posed a high likelihood of injury to the plaintiff. *Id.* at 384. The Supreme Court held that it was "appropriate . . . to take into account not only the number of lives at risk, but also their relative culpability." *Id.* Because the plaintiff chose to put himself and the public in danger by engaging in the lengthy, high-speed chase and those who would be spared by the officer's actions were innocent, the Supreme Court "ha[d] little difficulty in concluding it was reasonable for [the officer] to take the action that he did." *Id.*

*Scott* did not "articulat[e] a mechanical, *per se* rule"—"[t]he inquiry described by the Court [wa]s situation specific." *Id.* at 386 (Ginsburg, J. concurring) (citations omitted). It appears that Defendants are arguing that the facts as alleged show that there can be no question that there was a similar risk of harm to others by James's actions such that Schmalshof's decision to terminate James's flight, even though it would almost certainly cause serious injury to James, was reasonable.[4] *See* Mem. Supp. Mot. Dismiss 9–10. Plaintiff argues that the facts of this case are distinguishable from *Scott* and other cases where courts have found that a police officer's actions to terminate a chase were reasonable as a matter of law. Resp. Mot. Dismiss 10–13.

The ultimate question will be whether James's conduct was "highly dangerous," *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016) (noting that "the parties were correct to focus

---

[4] Defendants note that Plaintiff provided dash camera footage as an exhibit to her complaint, Mem. Supp. Mot. Dismiss 5, but argue that "it is not necessary for this Court to review the dash cam video because the allegations alone provide the factual information necessary to grant" their motion to dismiss. *See id.* at 5 n.5. Because Defendants do not argue that the video conflicts with any factual allegations, the Court declines to consider the video at this juncture.

10

on the objective dangerousness of the car chase" in determining whether officers violated the Fourth Amendment by ramming the plaintiff's car), such that it was reasonable for Schmalshof to intentionally engage in a maneuver that had a high likelihood of injuring James. The Court finds that the Amended Complaint plausibly supports a conclusion that Schmalshof's actions were unreasonable and thus violated the Fourth Amendment. Defendants' reply makes this clear. Defendants argue that James "led police on a dangerous high-speed chase through the center of downtown Macomb, and he posed an immediate threat to the safety of the officers and general public," but the only allegations they can point to in the Amended Complaint to support this conclusion are that James was not stopping for MPD officers, that James was heading eastbound from Columbia on Jackson, and that on Route 67, James was traveling in excess of 100 miles per hour and two vehicles driving in the opposite lane of traffic passed by him. Reply 14–15; *see also* Am. Compl. ¶¶ 31, 64, 70. There is no allegation that any cars had to swerve out of the way or were forced off the road or that there were any pedestrians harmed by James's flight.

Defendants also argue that James sped through downtown Macomb's central business district, Reply 15, but that is not supported by the Amended Complaint. Schmalshof did not have visual contact with James's car until he reached Route 67. Am. Compl. ¶ 54. There are no allegations about James's conduct in Macomb other than that he was not stopping for city officers, so it is an unreasonable inference to conclude that James was speeding through a busy downtown area, let alone that Schmalshof, who had no visual contact with James until he was on Route 67, was aware of any such speeding. It is, however, reasonable to infer based on the allegations that the MPD Lieutenant's command to terminate the pursuit because there was no basis for it was broadcast in "any MCSO vehicle with an activated in-car video/audio system"

11

and that Schmalshof was operating an MCSO "vehicle . . . equipped with [a] radio[] that allowed [him] . . . to hear conversations that occurred between [MPD] officers," Am. Compl. ¶¶ 35, 38, that he heard such a communication.

In sum, the circumstances known to Schmalshof at the time he "seized" James are that James had failed to stop for MPD officers, that MPD had backed off of its pursuit, and that James was traveling fast—without swerving into oncoming traffic—on a rural road on which only two other cars were traveling. This is a far cry from the facts in *Scott* that led to a finding as a matter of law that the plaintiff's conduct was endangering other human life and therefore the force used against him was reasonable as a matter of law. The other cases Defendants cite are materially distinguishable. *See, e.g.*, *Abney v. Coe*, 493 F.3d 412, 416 (4th Cir. 2007) ("The record is replete with examples of reckless driving designed to elude the police and executed with little consideration for the lives and safety of other motorists."); *Sharp v. Fisher*, 532 F.3d 1180, 1184 (11th Cir. 2008) (reasoning that when the officer executed a PIT maneuver, he knew that the plaintiff "was fleeing from law enforcement officials" and "traveling at a high rate of speed," that "law enforcement officials had chased her at least 20 miles," that the plaintiff "had given no indication of stopping the pursuit or slowing down, [that] there were several civilian vehicles on the Interstate during the pursuit, and [that] she was driving erratically"); *Christiansen v. Eral*, 52 F.4th 377, 378 (8th Cir. 2022) (finding relevant that "[a] bystander vehicle and a police vehicle had hit stop sticks intended for [the plaintiff's] car, which almost caused an accident, and [the officer who terminated the stop with force] had received a report from an officer in pursuit that [the plaintiff] was suspected of driving while intoxicated").

### 3. Qualified Immunity

Defendants argue that if Plaintiff has stated a constitutional claim, Schmalshof is entitled to qualified immunity. *See* Mem. Supp. Mot. Dismiss 16–17. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[O]nce the public official raises the defense of qualified immunity, the plaintiff bears the burden of showing (1) whether . . . she has asserted a violation of a constitutional right, and (2) whether the applicable constitutional standards were clearly established at the time in question." *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998). A constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Est. of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quotation marks omitted).

The Court has already found that Plaintiff states a Fourth Amendment claim. But it concludes that she has failed to meet her burden of establishing that Schmalshof violated clearly established law. Plaintiff's argument as to qualified immunity is short and confusing. *See* Resp. Mot. Dismiss 15–17. She points to one district court case in the Seventh Circuit, *Arrington v. City of Chicago*, No. 17 C 05345, No. 17 C 04830, 2022 WL 2105871 (N.D. Ill. June 10, 2022), and argues that it is a case that would have put Schmalshof on notice that his conduct violated the law. Resp. Mot. Dismiss 17. "To determine whether a right is clearly established [the court must] look to controlling precedent from both the Supreme Court and" the Seventh Circuit. *Abbott v. Sangamon County*, 705 F.3d 706, 731 (7th Cir. 2013). If there is no binding precedent, the court "cast[s] a wider net and examine[s] all relevant case law to determine whether there

13

was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quotation marks omitted). Citing to one district court case is unquestionably insufficient to demonstrate that Schmalshof violated clearly established law. The Court will not conduct the research and construct an argument for Plaintiff. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not th[e] court's responsibility to research and construct the parties' arguments."). Because Plaintiff has not met her burden, the Court finds that Schmalshof is entitled to qualified immunity on the Fourth Amendment claim. Count II is DISMISSED.

### 4. Counts III and IV

Counts III and IV assert claims against the MCSO and McDonough County seeking to hold them liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the two constitutional violations she alleges in Counts I and II. Defendants seek dismissal of these counts on the basis that a *Monell* claim cannot survive without an underlying constitutional violation. Mem. Supp. Mot. Dismiss 17–18. Because the Court dismissed the Fourteenth Amendment claim, Counts III and IV cannot be based on a Fourteenth Amendment claim. But the claims can survive to the extent they are based on the alleged Fourth Amendment violation because a municipality is not entitled to qualified immunity. *See Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012).

### 5. Supplemental Jurisdiction

Defendants finally argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Mem. Supp. Mot. Dismiss 18. But this argument is premised on the Court having dismissed all of Plaintiff's federal claims. Plaintiff's *Monell* claims survive, so the Court will not relinquish jurisdiction of Plaintiff's state claims. *Cf.*

14

*Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015) ("In general, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." (quotation marks omitted)).

## CONCLUSION

Accordingly, Defendants the County of McDonough, the McDonough County Sheriff's Office, Evan C. Schmalshof, and Nicholas B. Ruggio's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 20, is GRANTED IN PART and DENIED IN PART. Count I and Count II are DISMISSED. Count I is DISMISSED WITHOUT PREJUDICE for failure to state a claim. Plaintiff did not request leave to amend, and the Court will not *sua sponte* grant such leave. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006). Count II is DISMISSED WITH PREJUDICE as Schmalshof is entitled to qualified immunity. All other counts remain. The Motion for Leave to File Reply in Support of Motion to Dismiss *Instanter*, ECF No. 24, is GRANTED. The Clerk is directed to file the reply, ECF No. 24-1, on the docket. Defendants must answer the amended complaint within fourteen days. Fed. R. Civ. P. 12(a)(4)(A).

Entered this 30th day of September, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
