E-FILED
Tuesday, 18 August, 2026 04:21:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

TAMMY MELLENTHIN, as Administrator and Personal Representative of the Estate of JAMES F. MELLENTHIN,

Plaintiff,

v.

THE COUNTY OF MCDONOUGH, THE MCDONOUGH COUNTY SHERIFF'S OFFICE, EVAN C. SCHMALSHOF, and NICHOLAS B. RUGGIO,

Defendants.

Case No. 4:23-cv-04187-SLD-RLH

ORDER

Before the Court is Plaintiff's Agreed Motion for Approval of Settlement, Allocation, and Distribution of Net Proceeds, ECF No. 53. For the reasons that follow, the motion is GRANTED.

**BACKGROUND**

Plaintiff Tammy Mellenthin, as Administrator and Personal Representative of the Estate of James F. Mellenthin ("James"), sues Defendants County of McDonough ("McDonough County"), the McDonough County Sheriff's Office ("MCSO"), Evan C. Schmalshof, and Nicholas B. Ruggio arising out of a vehicle chase that ended in James's death on January 27, 2023. *See generally* Second Am. Compl., ECF No. 34. Plaintiff brings claims under 42 U.S.C. § 1983, the Illinois Wrongful Death Act, 740 ILCS 180/1–2.2, and the Illinois Survival Act, 755 ILCS 5/27-6. *Id.* at 24–48. Plaintiff and McDonough County have settled the claims between them and, as part of that settlement, Plaintiff agrees to dismiss her claims against MCSO, Schmalshof, and Ruggio with prejudice. Agreed Mot. ¶¶ 8–11. Pursuant to the Wrongful Death

Act, Plaintiff asks the Court to approve the settlement terms, which include: payment of $148,047.42 to be distributed in equal shares to James's three children; payment of $526,952.58 to Plaintiff's attorneys for costs and attorneys' fees; and payment of $825,000 to MetLife Assignment Company to fund the purchase of structured settlement annuities that will provide periodic payments to each of James's children. Release & Settlement ¶ 7.1, Agreed Mot. Ex. D, ECF No. 53-4; Agreed Mot. ¶¶ 19–23, 27–28.

**DISCUSSION**

"The purpose of the Wrongful Death Act is to compensate the surviving spouse and next of kin [f]or the pecuniary losses sustained due to the decedent's death." *Elliott v. Willis*, 442 N.E.2d 163, 168 (Ill. 1982). The Wrongful Death Act provides for "damages . . . with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, and punitive damages when applicable, to the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2(a). Pecuniary injures include the loss of society enjoyed in a parent-child relationship. *E.g.*, *Pitzer v. City of East Peoria*, 597 F. Supp. 2d 806, 810 (C.D. Ill. 2009). Next of kin is determined by reference to Illinois's law of intestacy—where the decedent is survived by children, those persons are the decedent's next of kin. *Ford-Sholebo v. United States*, 980 F. Supp. 2d 917, 999–1000 (N.D. Ill. 2013) (citing *Stephens v. Trinity Med. Ctr.*, 685 N.E.2d 403, 404 (Ill. App. Ct. 1997)).

Settlements under the Illinois Wrongful Death Act require court approval, as a court must distribute settlement funds:

> to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.

740 ILCS 180/2(b). "Dependency is not limited to financial dependency, but also includes loss of society, which is comprised of mutual benefits that each family member receives from the other's continued existence, including loss of affection, care, attention, companionship, comfort, guidance, and protection." *Wilson v. Cook County*, No. 22 CV 6886, 2024 WL 3398339, at *2 (N.D. Ill. July 12, 2024) (quotation marks omitted). "When one of the parties is the widow of the deceased or a direct descendant, there is a presumption that they have sustained a substantial pecuniary loss." *Williams v. Rush-Presbyterian St. Luke's Med. Ctr.*, 899 N.E.2d 1241, 1246 (Ill. App. Ct. 2008). Contingent attorney's fees agreements may be part of a wrongful-death settlement, and Illinois "[c]ourts will enforce contingent fee contracts unless they are unreasonable." *Corcoran v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 803 N.E.2d 87, 90–91 (Ill. App. Ct. 2003). Courts will approve Wrongful Death Act settlements and proposed distributions of proceeds if they are "fair and reasonable" under the circumstances. *See Frese v. Nat'l R.R. Passenger Corp.*, No. 4:21-cv-04004-SLD-JEH, 2024 WL 4592336, at *4 (C.D. Ill. Oct. 28, 2024) (quotation marks omitted) (approving wrongful death settlements upon reaching the same conclusion); *T.S. ex rel. Stoudt v. Ford Motor Co.*, Nos. 04 C 4318, 03 C 7887, 2005 WL 1563234, at *1 (N.D. Ill. Mar. 14, 2005) (same); *Casper v. Zacheis*, No. 00-L-107, 2003 WL 24038316, at *1 (Ill. Cir. Ct. Sept. 8, 2003) (same).

James was not married at the time of his death, and his next of kin are his three minor children: H.M. (15 years old); K.M. (13 years old); and J.M (10 years old). Agreed Mot. ¶¶ 5–6; *Ford-Sholebo*, 980 F. Supp. 2d at 999–1000. Plaintiff states that each child "had a close and unique relationship with their father." Pl.'s Aff. ¶ 9, Agreed Mot. Ex. E, ECF No. 53-5. Although Plaintiff had adopted the children, James saw them nearly every day, attended their sporting events, visited the zoo and museums with them, and celebrated all holidays and

birthdays with them. *Id.* Plaintiff retained Spesia & Taylor to litigate this case and "agreed to pay attorney fees in the amount of one-third (33 1/3%) of all sums recovered through settlement or otherwise, plus litigation expenses." *Id.* ¶ 6. She states that she is "fully satisfied with the legal services provided to [her] by the attorneys at Spesia & Taylor." *Id.*

The full amount of the settlement is, at present, $1,500,000. Awarding the attorneys one-third of the settlement in fees plus their litigation costs—which includes costs for discovery, experts, travel, subpoenas, court fees, etc., Statement of Costs, Spesia Aff. Ex. 1, ECF No. 53-7 at 6–8—is required by Plaintiff's agreement with her attorneys and is reasonable. *See Corcoran*, 803 N.E.2d at 90–91. The settlement requires use of $825,000 to purchase annuities for each child that will pay $30,000 annually for four years (presumably beginning the year each child turns 18), then $1,500 monthly for seven years and one month, then lump sums between $208,314.30 and $390,740.21 (the difference presumably is based on the amount of time interest will accrue for each child). Release & Settlement Agreement ¶ 7.1. The remainder of the settlement amount, $148,047.42, will be distributed equally to each child, meaning $49,813.29 will go to each child. Agreed Mot. ¶ 23. The nature of the relationship between James and his children suggests that each child has an equal degree of dependency and, therefore, distributing the proceeds in equal shares to each child is appropriate. Purchasing annuities to accrue interest and provide for payments to the minor children over time is a prudent way to structure this settlement. In sum, the Court is satisfied that the settlement agreement and proposed distribution of proceeds is "fair and reasonable" under the circumstances and, therefore, the Court approves the settlement agreement.

## CONCLUSION

Accordingly, Plaintiff's Agreed Motion for Approval of Settlement, Allocation, and Distribution of Net Proceeds, ECF No. 53, is GRANTED. Plaintiff Tammy Mellenthin, as Administrator and Personal Representative of the Estate of James F. Mellentin, is authorized to execute the Release and Settlement and to present this Court's order to the probate court for approval of the settlement, distribution of proceeds, and supervision/administration of the remaining settlement proceeds to the minor children. Annuity payments to minor children H.M., K.M., and J.M., shall not be accelerated, deferred, increased, decreased, anticipated, attached or assigned in any manner by Plaintiff or any of the minor children, nor shall Plaintiff or any of the Minor Children, including any payee, have the power to sell, mortgage, pledge, encumber, or anticipate the annuity payments or any part thereof, by assignment or otherwise, without approval and order of a court and a finding pursuant to 215 ILCS 153/15.

Because they contain significant personally identifying information, the Clerk is directed to seal the exhibits to the agreed motion. Plaintiff is DIRECTED to file by September 1, 2026 redacted versions of the exhibits cited by the Court: Plaintiff's affidavit; Spesia's affidavit and accompanying exhibit; and the Release and Settlement. Any information listed in Federal Rule of Civil Procedure 5.2 and Civil Local Rule 5.11(A) shall be redacted.

Entered this 18th day of August, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE